## David McClelland et Ux., Plffs. in Err., *v.* Joseph Patterson.

A judgment of a justice of the peace in favor of a lessor and against the tenant, that the latter deliver up possession of the demised premises to the former, in proceedings regularly instituted to recover the possession, is binding and conclusive between the parties unless reversed on appeal duly taken, and is a defense in an action of trespass against the lessor brought to recover damages suffered by the tenant's wife from the legal execution of the writ of possession.

The lessor is only liable in damages for whatever was, by his direction, done illegally by the officer in executing the writ.

(Argued November 8, 1886. Decided November 15, 1886.)

October Term, 1886, No. 199, W. D., before Gordon, Paxson, Trunkey, Sterrett, Green, and Clark, JJ. Error to the Common Pleas No. 1 of Allegheny County to review a judgment on a verdict for defendant in an action of trespass on the case for injuries. Affirmed.

This action was brought by David McClelland and wife against Joseph Patterson to recover damages suffered by the wife, in consequence of alleged injurious treatment in ejecting her and her children from a house occupied by plaintiffs. Defendant justified under writ of restitution issued by an alderman April 16, 1884, and executed by a constable and his assistants.

---

Note.—Even if the judgment be irregular, the record not showing the finding of facts as required by law, and it be reversed on certiorari, trespass cannot be sustained against the magistrate and lessor, there being no question of the existence of the alderman's jurisdiction, or of the facts necessary to give it. Leese v. Horne, 30 Pittsb. L. J. N. S. 316. But a recovery was had against the landlord and justice, where the lessee was dispossessed under the act of April 3, 1830, for nonpayment of rent, where the justice had no jurisdiction, the tenant never having been properly summoned. Cassel v. Seibert, 1 Dauphin Co. Rep. 16.

The facts fully appear in the following charge to the jury in the court below:

"This case is one that requires your careful discrimination. It involves certain well-settled legal principles upon which not only the rights of these parties depend, but the rights of everyone who has been, or may be, in any form, brought in contact with legal proceedings. Every time a man gets a judgment and has his writ put into the hands of the sheriff and sells out the defendant, it annoys or injures somebody, and it is calculated to bring about distress and feeling, particularly to his family. To have my house sold over my head, by the sheriff, and to be notified to leave, would not only distress me, but would be a great distress to my family, and in certain circumstances and under certain conditions might result in very serious consequences. But where you, having the writ, had the legal right to turn me out, nothing illegal being done in the institution of that writ, that you should have to pay me the damages that I sustained or that my wife sustained, by consequences over which you had no legal control, but simply consequences resulting from the enforcement of the law, would be a most extraordinary state of affairs.

"[The principle of law is well settled that if a man does a legal act, the motive with which he does it cannot be inquired into.] If he does an illegal act, that which makes his conduct a violation of the rights of others, then his motives may be inquired into; and in a case of this kind, it is a matter for the serious consideration of the jury in assessing the damages that ought to be given for an illegal act. You must bear in mind that before you can give damages there must be some illegal act shown. The illegal act being established, then the motive and the conduct of the parties, going to show malice, is a matter for very serious consideration; because, upon that, you have a right to base damages, not simply compensating the party injured, but, for the purpose of punishing and deterring the party found guilty of such conduct from doing it again, and teaching others by the force of example that they must not violate the rights of others. Suffice it upon that question at present.

"Take the case as represented by the plaintiff and his wife: the facts that the defendant, with four parties, employed by himself, to assist an officer, and that officer, as far as we know, without any legal authority, acting at his instance, went into

the house of the plaintiffs (it was their house for the time being, although they may not have owned it), and without any excuse or pretense of legal authority, commenced throwing or carrying out the plaintiffs' property, used rude language and some violence, of a slight character however, and literally turned the house inside out; compelled the plaintiffs to seek a home elsewhere; and that this was done without any regard to ordinary propriety, but was done harshly and rudely, and without waiting to see whether or not whatever claim that might have existed could not be arranged, or, until, at least, the husband should come upon the ground; that Mrs. McClelland, the plaintiff, having to look after her property, see that it was protected, which was perfectly right, was thrown into a state of excitement, took a chill, and finally after they found a home, though an uncomfortable one, she began by degrees to fall into a condition of illness, and the result was the delivery of a still-born child.

"Now those facts taken alone, standing apart from any legal excuse, if the evidence would connect the defendant with them, as undoubtedly there is some evidence to do it, because the defendant was in the neighborhood, and the evidence of the plaintiffs shows he was there ordering the men to make the ejectment not ordering them to do any personal injury to the parties, but directing them to go on and do what appears, in this view of the case, an unwarrantable act. If that were the whole case, I heartily agree with the plaintiffs' counsel, that it is pretty difficult to conceive of a greater outrage, or one that calls for a stronger vindication on the part of the jury; and the jury ought not to stand very closely upon any reasonable amount of damages. A man that would do that would be so lost to propriety and justice that the jury ought not only to vindicate the plaintiff, but ought by their verdict to teach others who have a disposition to take the law into their own hands that it is a very dangerous and expensive sort of abuse.

"But when we come to the other side we find these facts presented: the plaintiffs claimed the right to hold this property for another year. If there had been no judicial proceeding about the matter, if there had been no determination, that would be a matter for your consideration; but I am bound to tell you what is the law, as I understand it—that we have not anything to do with that question here. The law provided how this controversy was to be determined. The defendant in this action,

who represented, as agent, Mr. McCutcheon, the owner of the property, instituted this proceeding before a justice of the peace after the first of April, alleging 'that on said last-mentioned day he demised said premises to a certain David Hughey for the full term of one year, at the monthly rent of $18, which said term being fully ended; that the said Jos. Patterson, agent, being desirous, upon the expiration of the said term, to have again and repossess the said premises, for that purpose did, three months previous to such expiration, demand and require the said David Hughey and David McClelland, his subtenant, to remove from and leave the same; and the said David Hughey and David McClelland having hitherto refused and still refusing to comply therewith, as are directed by the act of assembly in such cases made and provided.'

"That was after the new term had commenced, if there was a new term. The fact that there was a new term was a complete defense to that proceeding. If there was, it could have been set up there, and it was the duty of the McClellands to set it up. It became a question of inquiry before the squire who tried that case whether or not McClelland had a right to hold onto that lease, or at least to hold onto the property, or whether he could be ejected after the commencement of a new term.

"The case went on to trial; the parties appeared; Joseph Patterson was sworn for the lessor, and David McClelland, Jessie McClelland, and Annie McClelland were sworn on behalf of the lessee. Now, it is not material here whether the squire gave judgment in that case according to justice and right or not. We cannot determine that. If he did not, there was a way of rectifying it. If he did, no harm has been done so far. The judgment of the squire, unappealed from, is just as solemn and convincing and has the same legal results as the judgment of this court. Every legal incident that follows or accompanies the judgment of the squire is not material. Whether he found fairly or unfairly, from proper or improper motives, when a judgment is once entered it has the same solemn effect as a judgment of any court of record.

"[A material inquiry in that case was the very matter we now have in controversy. I must tell you that the judgment of the squire concluded that; that we cannot inquire into it. Even though you are satisfied that the squire made an erroneous conclusion, we cannot go beyond his judgment in this action.] It

is an absolute, imperative, and a necessary rule of law that whenever a matter is once judicially heard and determined, that must end it forever, and it has been determined in that proceeding. Where the parties have had proper notice and have taken the advantage of the opportunity to be heard, where it has gone through a regular course, and the proceedings are regular, no court can interfere with the legal conclusions of that judgment.

"One would say: 'That is very hard—my rights at the mercy of a squire, who may have been and often is talked to about the case before, and who almost always gives judgment for the plaintiff;' but that does not end it. The act of assembly makes provision for that. It says: 'And the said justice shall also give judgment in favor of the lessor and against the lessee or tenant, for such damage as, in his opinion, the said lessor may have sustained, and for all the costs of the proceedings.' That is, if he is satisfied that the plaintiff is right and is entitled to the judgment. 'And he shall forthwith issue a warrant to any constable in the county, commanding him immediately to deliver to the lessor, his agent or attorney, full possession of said demised premises, and to levy the damages and costs awarded and taxed by said justice, upon the goods and chattels. of the lessee or tenant or other person in possession; providing that the defendant at any time within ten days after the rendition of the judgment may appeal to the court of common pleas in the manner provided in the first section of the act relative to landlords and tenants, approved April 13, 1830; that such appeal shall not be a *supersedeas* to the warrant of possession aforesaid, but shall be tried in the same manner as actions of ejectment; and if the jury shall find in favor of the tenant, it shall then assess the damages which he shall have sustained by reason of his removal from the premises,' etc.

"Now that is the only proceeding by which this error, if error there was, on the part of the squire could have been reviewed. It never was reviewed in that way. Another proceeding, an improper one, was taken, and the judgment of the squire was affirmed. That ends that; and everything incident to the justice or necessary to sustain his conclusions is unquestionably assumed and must be in the trial of this case.

"Then we have this state of facts: that on the 7th of April a judgment was entered against David McClelland, one of the

plaintiffs, that he deliver up possession of this property to Patterson, the defendant.

"He did not do it, and on the 16th day of April a writ of possession was issued, directing the constable to put the defendant, Patterson, in possession of the property, to turn out everybody there. So far then as any act was done under that writ it was not a violation of the law; he is protected in it; it was not simply his right, it was his duty to do that; he could be compelled to do it and punished if he had not put Patterson in possession of these premises. The act says he shall do it 'immediately,' but of course there are some circumstances under which 'immediately' does not mean 'just at this instant;' and [when we take into consideration the time of day this writ was executed, and the character of the day, we are bound to tell you as matter of law, that there is nothing in the case that would make the execution of the writ at the time, and under the circumstances it was executed, anything savoring of illegality or oppression. That the parties may not have chosen to wait until the husband came home has not anything to do with this case so far as legal rights are concerned. He was not bound to do it. It would have been very clever for him to have done it, but the question is whether the neglect to do it was a violation of the law. We say to you the fact that he would not wait for the husband to be sent for was not, of itself, a violation of law.] It was not a violation of law to carry the goods out carefully and properly and put them on the street, so far as the evidence shows, in the manner in which it was done.

"But if, as is alleged on the part of the plaintiff, Mrs. McClelland, the officer, in executing the writ, laid hold of her, or if he used violent and abusive language, in such a way as would be indecent or unbecoming, he would be liable for whatever the natural result was; and Mr. Patterson would be liable if that were done by one of the parties that he employed or sent there; and he would be liable if he were there seeing what was going on and did not interfere with it; I mean now, this direct and improper conduct and violence; or if the circumstances of the case would justify the jury in finding that such conduct was in accordance with the general instructions Patterson gave, to put these people out at all hazards. But he is not liable, because he was there, for the illegal conduct. If the turning of these

people out had been illegal, which we told you was not, then he would have been liable.

"It was the duty of the officer to execute the writ; and if Patterson, or any other plaintiff in the writ, was merely upon the ground, without interfering with the officer, to see that he did his legal duty, and gave no directions in the matter, and the officer violated his duty, the officer would be liable and not he. There must be something savoring of an improper interference with the officer to make him liable. You issue an execution to the sheriff, put it into his hands, tell him to levy upon my property; the writ is against me; the sheriff comes and turns me out; he may do a great many acts of violence; he may, if he choose, if he has trouble in getting furniture out, break it and throw it out of the window; but if you are there, ordering him, under such circumstances as would indicate that you were co-operating or conniving with him in violating the law, then you would be responsible, but not otherwise.

"Now, when you come to look at this case, the great burden of the injury is the result of what occurred at that time, which caused this woman to sicken, and to bring about the results complained of, and to affect her health. Then, if the defendant is liable, and is liable for the illegal act of the officer, which was the taking hold of her by the arm and using some abusive language, or if the men he sent there did such a thing and the result that followed was not in any way affected by that conduct, but was brought about by the fact that she was shocked or worried and thrown into an improper, unhealthy condition by reason of her property being turned out, and being left without a home, then you could not find for the plaintiffs. And why? Because what the defendant is responsible for is not that which brought about the injury. It would have been brought about if the alleged illegal acts had not occurred. [But if it required the illegal conduct, if there was any, in connection with what was legal, to bring about the result, then he would be responsible for the whole, providing the result would not have followed if it had not been for the illegal conduct.]

"Now, this is drawing a pretty fine distinction. If I do two things to you, one of them legal and the other not, and a general result follows, I am not responsible for the consequences of the legal act; and if the illegal act would have had no tendency to bring about the injury, but it was the legal act, I am not respon-

sible in damages. But if it would not have resulted from the legal act, and the illegal act superinduced the cause which, acting in connection with the legal act, or in any other way, brought about the injury, I am responsible, because it follows that without the illegal act you would not have been injured. It need not necessarily follow that the illegal act was the sole cause, but was it the superinducing cause, the cause without which the injury would not have occurred?

"I hope, gentlemen, I have made myself understood. [We charge you that no injury that resulted from the legal execution of this writ of possession can be held sufficient cause to found a verdict against the defendant in any amount; and it does not make any difference to that extent what his motives were, whether kindly or unkindly, whether harsh or good-natured.]

"But if you believe from the testimony that he was there superintending and supervising this ejectment, and that the parties under his control did that which was illegal, he is responsible for whatever illegal act was done by those parties that he specially employed; and he is only liable for whatever was done by the officer, the proper party to execute the writ, that was done either expressly or impliedly by his direction that was illegal. If the only thing that the officer did was to catch this woman by the arm, or press it, or squeeze it, you cannot hold the defendant for that, unless you can find from the testimony that he was acting under the authority, express or implied, of Patterson. Patterson had a right to be there to see that the writ was properly executed. The officer's duty was to execute the writ properly. If he did it illegally, Patterson is not liable unless it was done at his instance, or the jury are justified in finding it was done by his orders." ·

The jury rendered a verdict for defendant, and plaintiffs took this writ, assigning as error the portions of the charge inclosed in brackets.

*Hill Burgwin,* for plaintiffs in error.—Where one man has vexed another by causelessly and maliciously exercising on him, to his damage, powers incident to his situation of superior, the injured party is entitled to redress by action on the case. Sutton v. Johnstone, 1 T. R. 493, 503. See also Neilson v. M'Donald, 6 Johns. Ch. 201.

Punitive damages were recovered against an officer, who, to vex the defendant, seized in execution his favorite horse, instead of other property shown him. Rogers v. Brewster, 5 Johns. 125.

The execution of legal process in an oppressive manner, tending unnecessarily to distress and injure a party, gives the party injured a remedy. Sommer v. Wilt, 4 Serg. & R. 24.

If defendant acted in a deceitful, harsh, cruel, or oppressive manner, the jury may give vindictive damages. M'Bride v. M'Laughlan, 5 Watts, 375.

*J. Chas. Dicken,* for defendants in error.—In Underhill on Torts, it is said: "Courts will not inquire into the motives of a person enforcing a legal right," citing a multitude of authorities, including Glendon Iron Co. v. Uhler, 75 Pa. 471, 15 Am. Rep. 599.

In Jenkins v. Fowler, 24 Pa. 308, Justice BLACK says: "As long as a man keeps himself within the law by doing no *act* which violates it, we must leave his motives to Him who searches the heart.

A malicious exercise of a right would give the plaintiff no cause of action. Fowler v. Jenkins, 28 Pa. 178.

PER CURIAM:

An examination of the facts of this case leads us to the conclusion that they were well disposed of in the court below, and that a proper exposition of the law applicable to them is contained in the charge of the learned judge who presided over the trial.

Judgment is affirmed.